L. J. TALBOT AND FRED WALKER, RESPONDENTS, v. THE J. V. BRINK-
MAN COMPANY BANK AND J. GEORGE BRINKMAN, APPELLANTS.

Kansas City Court of Appeals. June 29, 1925.

**1.—Parties—Misjoinder—Where Question Was One of Misjoinder of Parties,
Cause Will be Remanded to Permit Amendment Allowing Plaintiff to Pro-
ceed in His Own Name.** In an action by a broker to recover real estate
commissions, where evidence showed plaintiff W. employed plaintiff T.,
agreeing to give him one-third of commission, T. being also assisting agent
for other party to transaction under agreement to receive part of such
agent's commission, **held** defendants' demurrers offered at close of the evi-
dence should not have been sustained on theory that no liability was shown
on part of defendants to plaintiff T., and as the question is one of mis-
joinder of parties, the judgment will be reversed and cause remanded to
allow plaintiff W. to amend petition and to proceed in his own name alone.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 1195, n. 96.
Trial, 38Cyc, p. 1544, n. 75.

Appeal from Circuit Court of Jackson County.—Hon. A. C. South-
ern, Judge.

REVERSED AND REMANDED.

*Lathrop, Morrow, Fox & Moore* for appellants.

*Watson, Gage & Ess* for respondents.

ARNOLD, J.—This is an action to recover a real estate commis-
sion. The case was tried before the court without the aid of a jury,
resulting in a judgment in favor of plaintiffs in the sum of $2882.43,
and defendants have appealed. After submission of the case to this
court the death of plaintiff L. J. Talbot was suggested and the cause
was ordered to proceed in the name of the surviving partner, Fred
Walker.

The facts show that defendants owned a ranch in Osage county,
Kansas, and employed plaintiff, Fred Walker, to sell or exchange it.
Afterwards Walker entered into negotiations with a Mrs. Lantry,
owner of the Peristyle Apartments in Kansas City, Missouri, for the
trade of the ranch for her property. Plaintiff Talbot had an
office with one Lipscomb with whom the apartments were listed for
trade. Mr. Lipscomb had told Talbot that if he ran across anyone to
whom he could trade the apartment that he would divide his commis-
sion with him. Walker made his headquarters in Kansas City at
the office of Lipscomb and Talbot. In general talk at the office Walker
told Talbot about the ranch. Walker afterwards told defendants
about the apartments and defendants directed Walker to "go ahead

and see what you can do about it." There was nothing said about compensation at that time nor was Talbot's name mentioned. Later, after talking to Talbot about the trade, Walker again talked with defendants and mentioned then for the first time the subject of commission and told them that "Mr. Lipscomb, . . . was to get a $2500 commission on his part, and I had to pay Mr. Talbot a part of my commission, and I would expect the same and that was agreed on." Lipscomb had agreed to pay Talbot one-third of his commission and Walker agreed to pay Talbot a like portion of his commission if the trade was negotiated. Defendants inspected the apartments in company with Talbot and Walker, Talbot doing much toward effecting the trade, and finally the trade was consummated.

In regard to Walker's agreement with Talbot as to the commission, in addition to what we have already quoted from his testimony, Walker testified that—"Q. Just state whether or not you told him (the defendant Brinkman, who was acting for himself and defendant bank) any thing about Mr. Talbot's connection with it (the trade) except as you have testified heretofore. . . . A. Well, he told me to go ahead and make the deal. Q. Had you advised him or told him anything about Mr. Talbot receiving any part of the commission? A. Yes, he was to get a third *from me,* of twenty-five hundred dollars that *I was to get.*"

Further testifying Walker stated that in a conversation with Brinkman, the latter told him that "he would pay $2500, the same as the other side, and I told him I had another man on the deal that got part of this money. I told him at same time it was Mr. Talbot." "I told him the other side was getting $2500, and we would expect on our side, I and the other man that was with me, the same amount, and he said that was all right." Walker further testified that he may not have told Brinkman what proportion of his commission Talbot was to receive but that he did tell Brinkman that Talbot was to get a part of his commission and also a part of Lipscomb's. He further testified that when the trade was consummated "Mr. Brinkman asked myself and Mr. Talbot if we would cut down ours to that ($2000, the figure that Lipscomb had cut his to), which we did."

Talbot testified that Lipscomb told him in the presence of Walker, "If you will help me get this deal through, I will pay you a part of *my commission,* and I said how will it be with you, Mr. Walker, your people? He says, I will do the same. You shall have a part of the commission. . . . Q. Did he say what part? A. I was to have a third. Q. Of the commission that was paid . . . A. (interrupting): To Mr. Walker."

He further testified: "I never had any conversation with Mr. Brinkman or anybody connected with the Brinkman bank in regard to the commission. I don't think I ever told Mr. Brinkman that I

expected any commission. *When I am dealing with another agent I don't go to his principal and find out so and so.* I do not know that I ever told Mr. Brinkman or anyone connected with the bank that I was obtaining a portion of the commission from the other side. I don't remember anything of the kind. I was not present when the deal was closed at Woodlea. It must have been a month after that before I saw Mr. Brinkman. I then asked him when he was going to pay this commission, and he said, 'I don't owe any commission.' I said, 'That is strange,' and told him I understood he was to pay $2500 and then $2000, and he said, 'No, I wasn't to pay a cent.' I then told him I would have to go and see Mr. Walker. Mr. Walker said he owed us $2000. I must have seen Mr. Brinkman three or four times, and finally he said, 'I was to pay Walker a thousand dollars,' but hadn't done so, and that was the last time I went there. He said something about wanting to have a settlement with Mr. Walker. The first time I asked Mr. Brinkman about a commission was probably a month after the deal was closed. I kept after Mr. Walker to get the commission. I went to Mr. Brinkman's office, I think, three or four times in 1913. *I did not ask Mr. Brinkman for a third of any amount.*"

Mr. Brinkman testified on the part of the defendants that Walker was to receive a commission of one thousand dollars and that this was paid Walker by giving him credit on his indebtedness; that Walker "did not tell me anything about Mr. Talbot prior to closing of the deal or that Mr. Talbot was to recieve a third of the commission that was to go to him."

Defendants insist that their separate demurrers offered at the close of all the evidence should have been sustained. This assignment is based upon the contention that no liability was shown on the part of defendants to plaintiff Talbot.

The evidence tends to show that the agreement between Talbot and Walker was that Talbot was to receive one-third of Walker's commission; that is to say, that Walker employed Talbot to assist him in making the trade and that Walker was to divide his commissions with Talbot. There is no evidence tending to show that in making this contract Walker was acting as agent for defendants. But there is some testimony to the effect that defendants knew of such contract, and, at least, did not object to it. However, whether this may be accepted as proof of ratification, was a question for the court sitting as a jury.

The petition is based upon a joint contract of employment and states that defendants, on a day named, employed plaintiffs as their agents for the sale of the property and agreed to pay plaintiffs, as agents negotiating the sale of said real estate the sum of $2000; that plaintiffs did secure a purchaser for the property to

whom the same was sold, and that defendants have failed and refused to pay said amount due and owing to plaintiffs for their said services, and which sum defendants agreed to pay; that demand therefor was made and refused.

Defendants' position is that the question is not one of misjoinder of parties plaintiff, but one of entire failure of proof in support of the petition, and therefore that the demurrers should have been sustained. We cannot accept this position as tenable. It must be conceded that if there was no joint cause of action in Walker and Talbot, then of necessity it becomes a several cause of action vested in plaintiff Walker and Talbot is an unnecessary party. This being true, the question is one of misjoinder. On this point we find the opinion of the Supreme Court conclusive, as expressed in Slaughter v. Davenport, 151 Mo. 26, l. c. 32, as follows:

"It follows that the cause of action alleged was on a joint contract and that the suit was properly brought in the names of the joint obligees. The amendment changed it to an action on a several contract. If the contract was several we see no reason why this might not be done, for, if a party to a suit is an unnecessary party, it is difficult to see how the dismissal of it could in any way change the cause of action. But it is not so when the suit is by joint contract, and the amendment changes it to an action on a several contract, for in that case there is an entire change in the cause of action, from a joint to a several cause of action upon a joint contract which is not permissible."

It was held in Megher v. Stewart, 6 Mo. App. 598, that in an action brought in the name of two plaintiffs upon an alleged joint contract, and upon the evidence disclosing that only one plaintiff was interested in the contract, and a judgment was rendered in favor of both plaintiffs, if defendants were prejudiced by failure to dismiss as to the co-plaintiff, not interested in the contract, the judgment should be reversed and the cause remanded. [See, also, Cruchon v. Brown, 57 Mo. 38; Weil v. Simmons, 66 Mo. 617, 619.]

For reasons herein stated, the judgment is reversed and the cause remanded so that plaintiff may amend the petition if he so desires and the cause proceed in the name of plaintiff Fred Walker alone.

It is so ordered. *Bland, J.,* concurs; *Trimble, P. J.,* absent.